## McKinney Estate.

Argued October 2, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert L. Campbell,* for appellant.

*George Wasser,* trustee ad litem, for appellee.

OPINION BY MR. JUSTICE JONES, November 11, 1969:
Mary Morton McKinney (testatrix) died, testate, February 18, 1896. Under the terms of her will she created a trust whereunder the income beneficiaries were to be her seven surviving children and her husband, who also survived her. The beneficiaries were to receive the income for life, and, upon the death of the last surviving child, the trust was to be terminated and the corpus distributed in accordance with the following language from the will: "It is my will that this arrangement [the trust] shall continue during the natural lives of all my children. When all the children are deceased, the estate is to be divided equally among their *direct heirs.* Should any child die without issue, the portion of such child shall be divided equally between the direct heirs of the other children. " (Emphasis supplied). Testatrix' children died in the following order and circumstances: Evaline McKinney died on October 27, 1896, without issue (no "direct heirs"); Mary Hamilton died on April 7, 1913, leaving a daughter, Wilma Hamilton, who died on July 23, 1913 (one "direct heir"); Carrie Stearns died on January 6, 1954, without issue (no "direct heirs"); James McKinney died on August 18, 1957, leaving two sons, James W. McKinney and John S. McKinney (two "direct heirs"); Margaret McFarland died on March 8, 1959, leaving one son surviving her, Kenneth T. H. McFarland, Jr. (one "direct heir"); Martha Swift died on November 3, 1962, leaving two sons, Robert S. Swift and Thomas H. Swift (two "direct heirs"); Birdella Hettler died on April 8, 1968, without issue (no "direct heirs"). The death of Birdella Hettler terminated the trust. The instant litigation involves the distribution of the trust fund pursuant to the above-quoted language from the testatrix' will.

The Orphans' Court of Allegheny County divided the trust fund into six shares for distribution, including the Estate of Wilma Hamilton as one of the distributees. The appellant, Kenneth T. H. McFarland, Jr., claims that this inclusion was improper because the will should have been read to incorporate a requirement that a "direct heir" *must survive the testatrix' last surviving child* in order to share in the distribution.

Appellant first urges that a prior decision of this Court interpreting this same will, *McKinney's Estate,* 260 Pa. 123, 103 A. 590 (1918), referred to the remainder interest as *contingent* and that this should have some weight now. However, the Estate of Wilma Hamilton was not a party to that appeal, the question of when and in whom the remainder interest would vest was not at issue, and, since five of the seven children of Mary Morton McKinney were still alive at the time, the remainder interests were in fact still contingent (since the "direct heirs" could not be determined until all the children had died). This prior decision when cast in its proper prospective is neither significant nor controlling.

Appellant next argues that the present statutory law would prevent any distribution to the Estate of Wilma Grace Hamilton, citing the Act of June 29, 1923, P. L. 914, 21 P.S. §11, the Wills Act of 1947, 20 P.S. §180.14, and the Estates Act of 1947, 20 P.S. §301.14. Although admitting that, because these statutes have no retroactive application, they are not directly pertinent, it is nevertheless claimed that the theory behind them should be applied. It is sufficient to point out that appellant is correct in stating that these statutes do not apply retroactively. Moreover, *under the law as of the date of testatrix' death,* the Estate of Wilma Hamilton would be entitled to share in

the distribution. See: *Milligan's Estate*, 244 Pa. 161, 90 A. 552 (1914); *Dutilh's Estate*, 286 Pa. 389, 133 A. 548 (1926).

Finally, appellant points out the cardinal principle of testamentary construction is that the intent of testatrix should prevail (*Houston Estate*, 414 Pa. 579, 201 A. 2d 592 (1964)) and would have us consider that the "Pay and Divide Rule" was applicable at the time of testatrix' death. Whether or not that Rule was applicable in 1896, it was abolished in *Dickson Estate*, 396 Pa. 371, 152 A. 2d 680 (1959), and will no longer be applied by this Court. See: *Hope Estate*, 398 Pa. 470, 159 A. 2d 197 (1960).

It should also be noted that this Court has repeatedly indicated that, as much as possible, it will go no farther than the four corners of a testator's will to determine his intent. *Woodward Estate*, 407 Pa. 638, 182 A. 2d 732 (1962). "[I]t is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words." *Saunders Estate*, 393 Pa. 527, 529, 143 A. 2d 367, 368 (1958). In addition, when the language of the will is plain and unambiguous, such language controls and there is no room for judicial construction. *Lewis Estate*, 407 Pa. 518, 180 A. 2d 919 (1962); *Buzby Estate*, 386 Pa. 1, 123 A. 2d 723 (1956).

In the case at bar, there is no confusion or ambiguity in the words used by the testatrix and, therefore, no basis for this Court to interpret or add to those words. The trust fund is to be divided equally among the "direct heirs" of the children of Mary Morton McKinney. Since a living person has no "heirs", the distributees could not have been determined until the deaths of their respective parents. The will contains no provision requiring these "direct heirs" to survive until the termination of the trust, and no such

requirement can be added to alter the plain meaning of the will.

Decree affirmed.   Costs on appellant.

Mr. Chief Justice BELL concurs in the result.