## Lewis Estate.

Argued April 17, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*J. Roy Lilley,* for appellant.

*J. Boyd Landis,* with him *William J. Davis,* and
*Bennett & Davis,* and *Landis and McIntosh,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, May 21, 1962:
The vital question raised by this appeal is the meaning of the word "money" as used in the testatrix's holographic will.

Testatrix, Edith A. Lewis, died on June 11, 1954, leaving a personal estate of $10,658, of which $251.80 was in cash, $270.25 in household goods, and $10,135.95 in stocks and bonds. Her debts and expenses of administration (which were not itemized or broken down) amounted to over $5,000. In her holographic will dated February 1, 1950, testatrix made specific cash bequests of more than $1,750. She then gave, in separate paragraphs, specific articles of silverware, china and household goods or furnishings to eight friends and one cousin. She then provided: "To Mrs. Willard (Margaret Taylor) Bates of Stevensville, Penn'a. *all my per-*

*sonal property except as otherwise specified,** with the request it is not to be sold.*

*"All remaining money after debts and bequests are paid* I bequeath to the Presbyterian Homes of Central Penn'a. of Newville, Penna. If for any reason this cannot go there, then I wish it to go to Mrs. Margaret Taylor Bates of Stevensville, Penna."

The Orphans' Court held that (a) the words "all my personal property except as otherwise specified" meant, referred to and included only silverware, china or household goods and furnishings, and (b) the words "All remaining money after debts and bequests are paid" meant and included not only cash, but also stocks and bonds. Mrs. Bates appealed.

The pertinent principles of law governing the interpretation of a will are well and clearly settled. In *Burleigh Estate,* 405 Pa. 373, 175 A. 2d 838, the Court said (page 376) :

"It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197."

The application of these well settled principles to some wills or to some language therein is sometimes difficult, especially if it be a holographic will which is

---

* Italics throughout, ours.

often *sui generis*. In a nutshell we attempt to discover, in the light of the language and scheme of the entire will and the surrounding circumstances, the intent of the testatrix, which is the pole star and must prevail.

Mrs. Bates contends that the words "all my personal property except as otherwise specified" is a residuary clause, and that "personal property" includes cash, stocks and bonds. Mrs. Bates is incorrect in her contention that the gift in this will of "all my personal property except as otherwise specified" is a residuary clause. She is correct, however, in her contention that personal property, when used in its ordinary (as well as in its legal) sense and meaning includes stocks, bonds, household goods and cash. Mrs. Bates also contends that "money" in its ordinary sense and meaning means "cash". "Money" *in its ordinary, customary and usual meaning,* does not mean stocks or bonds or real estate; it means "cash".* However, it is equally well settled that where a testator indicates an intention to dispose of his entire estate by a gift of "money"; especially if the gift as here is in a residuary clause, a gift of money will pass all his personal property or all the rest of his personal property, as the case may be: *Conlin Estate,* 388 Pa. 483, 131 A. 2d 117, and cases therein cited.

An analysis of Mrs. Lewis's will demonstrates that the personal property she bequeathed to Mrs. Bates was never intended to mean or to include cash or stocks and bonds because, inter alia, she requested that all the personal property which she gave to Mrs. Bates should not be sold. Moreover, if there were any doubt as to testatrix's intent from the language and scheme of her will, it would be resolved in favor and in support of the conclusion we have reached above, because the cash was not nearly sufficient to pay the debts,

---

* Sometimes in its broader sense it means "wealth",

expenses of administration and cash bequests, and many stocks and bonds would have to be sold in order to pay them.

We are convinced that this testatrix (1) intended to give Mrs. Bates only the *tangible* personal property which was not thereinbefore bequeathed, and (2) likewise intended the gift of "all remaining money after debts and bequests are paid" to be a gift of *all* her residuary personal estate, *including cash, stocks and bonds,* remaining after debts and bequests were paid.

Decree affirmed; each party to pay own costs.