## Tyler Estate

*John B. Schaner*, for exceptants.

*R. Lee Ziegler*, contra.

LEHMAN, P. J., November 1, 1962.—This matter is before us on exceptions to the auditor's report which distributes the balance as shown by the first and final account of William Holt, executor of the last will and testament of Horace Tyler, deceased, late of the Borough of Lewistown.

Horace Tyler died testate on January 10, 1928. His will gave his wife a life estate in all his real and personal property and provided for the sale of same following her death and the payment from said fund of seven pecuniary bequests to named individuals totalling $1800. Thereafter appear the following provisions:

"I further direct and order that if any of the above named beneficiaries shall die before my beloved wife, the share allotted to them, shall be distributed under the laws of the Commonwealth of Pennsylvania.

"I order and direct that after the above bequests are fully paid and satisfied, the remainder or residue of said fund, shall be given to the Watchtower Bible and Tract Society, of No. 18 Concord street (or avenue) in the City of Brooklyn, New York." . . .

The only remaining problem is whether the shares

which had been allotted to the legatees who have predeceased testator's widow should be distributed to testator's next of kin or to the residuary legatee.

Section 15 (c) of the Wills Act of June 7, 1917, P. L. 403, 20 PS §253, provides that "unless a contrary intention shall appear by the will," lapsed or void bequests "shall be included in the residuary devise or bequest, if any, contained in such will."

Has testator manifested an intention that such lapsed shares shall go to his next of kin rather than to the charitable organization named as the sole residuary legatee? We believe that he has. He expressly provided that if any of the legatees died before his wife, "the share allotted to them, shall be distributed under the laws of the Commonwealth of Pennsylvania." These words are totally unnecessary if the charitable residuary legatee is to prevail.

A construction is favored which will give effect to every word, rather than one which will render some words idle and nugatory: Carmany Estate, 357 Pa. 296, 299. No provision of a will will be disregarded or treated as surplusage unless no other conclusion is reasonably possible: Parkin Estate, 157 Pa. Superior Ct. 476, 480. A construction is to be avoided which renders any part of a will mere surplusage: Fidelity-Philadelphia Trust Company v. Klinger, 162 Pa. Superior Ct., 294, 297. Where will was drafted by experienced counsel, presumption is that a provision placed therein was used purposefully and construction will not be adopted which would make such provision meaningless: 95 C. J. S. 824, §614. The will in question was written on office stationery of "John J. Patterson Attorney-at-Law Lewistown, Pa." The said John J. Patterson was "experienced counsel." He was admitted to the Bar of Juniata County, Pennsylvania, on December 22, 1895. The will of Horace Tyler was dated August 31, 1926.

To construe the said words "Laws of the Commonwealth of Pennsylvania" as meaning the intestate laws of the Commonwealth of Pennsylvania is to give an effect to said words which would have been missing without them, to wit, to substitute a class of beneficiaries of the blood of testator for lapsed gifts. So construed, the said words are not idle or nugatory or surplus. On the other hand, to construe the said words "laws of the Commonwealth of Pennsylvania" as meaning the Wills Act of 1917 would deny to the said words any effect whatever and so render them as surplusage.

We hold that a bequest which provides that, upon the termination of the estate for life, the remainder over "shall be distributed under the laws of the Commonwealth of Pennsylvania" is described by a phrase which is similar or equivalent to a bequest to the "testator's heirs". Restatement, Property, §305c states:

"Other words of similar import. The word 'heirs' is the word most frequently employed to indicate that the conveyor has exhausted his specific desires by previous limitations and is now ready to let the law take its course. Other words, however, may be used to indicate the same intention and when they are so used they are 'other words of similar import.' Thus the words 'such persons as would by law inherit,' and 'according to law,' are construed to describe the same persons as are described by the word 'heirs,' unless a contrary intent of the conveyor is found from additional language or circumstances."

Further, testator uses the words, *"shall be distributed under the laws of the Commonwealth of Pennsylvania."* (Italics supplied.) The word "distribute" is derived from the Latin word, distribuere: to divide, distribute, to divide among several or many, to deal out, apportion, allot. Had testator intended to favor a charitable residuary legatee over his own blood, he

would not likely have used the words "shall be distributed," which implies a division among more than one. He more likely would have directed payment to the residuary legatee had this been his intention rather than distribution.

In construing a will, every intendment is made in favor of testator's heirs or next of kin: Wood's Estate, 321 Pa. 164. An heir at law cannot be disinherited except by express words or necessary implication: Potter's Estate, 257 Pa. 468. Our duty is to ascertain the intention of testator from the will in the light of these principles as well as the attending circumstances: Brennan's Estate, 324 Pa. 410; Sheradin Estate, 154 Pa. Superior Ct. 475. Certainly, in the instant case, testator intended to provide for such next of kin as would survive his wife. . . .

*Decree*

Now, November 1, 1962, exceptions of Evelyn Dyer and John H. Wagner to the auditor's report are sustained . . .